**IN THE UNITED STATES DISTRICT COURT FOR THE**
**WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **JENNIFER JOHNSON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. CIV-17-1004-STE** |
| | ) | |
| **NANCY A. BERRYHILL, Acting** | ) | |
| **Commissioner of the Social Security** | ) | |
| **Administration,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration denying Plaintiff's application for disability insurance benefits under the Social Security Act. The Commissioner has answered and filed a transcript of the administrative record (hereinafter TR. ____). The parties have consented to jurisdiction over this matter by a United States magistrate judge pursuant to 28 U.S.C. § 636(c).

The parties have briefed their positions, and the matter is now at issue. Based on the Court's review of the record and the issues presented, the Court **AFFIRMS** the Commissioner's decision.

## I.    PROCEDURAL BACKGROUND

Initially and on reconsideration, the Social Security Administration denied Plaintiff's application for benefits. Following an administrative hearing, an Administrative Law Judge

(ALJ) issued an unfavorable decision. (TR. 15-27). The Appeals Council denied Plaintiff's request for review. (TR. 1-3). Thus, the decision of the ALJ became the final decision of the Commissioner.

## II.    THE ADMINISTRATIVE DECISION

The ALJ followed the five-step sequential evaluation process required by agency regulations. *See Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); 20 C.F.R. § 404.1520. At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since April 1, 2013, her alleged onset date. (TR. 17). At step two, the ALJ determined Ms. Johnson had the following severe impairments: degenerative disc disease; narcolepsy; seizures; status post hip disorder; status post thyroidectomy; chronic pain syndrome; major depressive disorder; posttraumatic stress disorder (PTSD); and anxiety disorder. (TR. 17). At step three, the ALJ found that Plaintiff's impairments did not meet or medically equal any of the presumptively disabling impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1 (TR. 19).

At step four, the ALJ concluded that Ms. Johnson retained the residual functional capacity (RFC) to:

> [P]erform light work as defined in 20 CFR 404.1567(b) except the claimant: can occasionally stoop, kneel, and crawl; can understand and remember simple instructions; and perform work related to simple, routine, and repetitive tasks.

(TR. 21). With this RFC, the ALJ concluded that Plaintiff was unable to perform any past relevant work. (TR. 25). As a result, the ALJ made additional findings at step five. There,

the ALJ presented several limitations to a vocational expert (VE) to determine whether there were other jobs in the national economy that Plaintiff could perform. (TR. 53-54). Given the limitations, the VE identified three jobs from the Dictionary of Occupational Titles. (TR. 54). The ALJ adopted the testimony of the VE and concluded that Ms. Johnson was not disabled based on her ability to perform the identified jobs. (TR. 26-27).

## III. STANDARD OF REVIEW

This Court reviews the Commissioner's final "decision to determin[e] whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Wilson v. Astrue*, 602 F.3d 1136, 1140 (10th Cir. 2010). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotation omitted).

While the court considers whether the ALJ followed the applicable rules of law in weighing particular types of evidence in disability cases, the court will "neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Vigil v. Colvin*, 805 F.3d 1199, 1201 (10th Cir. 2015) (internal quotation marks omitted).

## IV. ISSUES PRESENTED

On appeal, Plaintiff alleges the ALJ erred in evaluating: (1) the RFC, (2) a consultative examiners' opinion, and (3) Plaintiff's subjective allegations.

## V. NO ERROR IN THE RFC

As stated, the ALJ determined Ms. Johnson had the following severe impairments: degenerative disc disease; narcolepsy; seizures; status post hip disorder; status post

thyroidectomy; chronic pain syndrome; major depressive disorder; posttraumatic stress disorder (PTSD); and anxiety disorder. (TR. 17). Ms. Johnson alleges that the ALJ failed to include limitations in the RFC stemming from these severe impairments, along with limitations related to non-severe impairments involving constipation, migraine headaches, and a Vitamin D deficiency. (ECF No. 15:6-27). The Court disagrees.

## A. ALJ's Duty in Assessing the RFC

Once a claimant's impairments are deemed severe at step two, the ALJ has a duty to discuss their impact throughout the remainder of the disability determination. 20 C.F.R. § 404.1545(a)(2). Indeed, in formulating the RFC, the ALJ must discuss the combined effect of *all* the claimant's medically determinable impairments, both severe and nonsevere. *See Wells v. Colvin,* 727 F.3d 1061, 1065 (10th Cir. 2013). However, "a finding that an impairment is severe at step two is not determinative of the claimant's RFC." *Johnson v. Berryhill*, 679 F. App'x 682, 687 (10th Cir. 2017).

"The question is not whether the RFC recounts or lists the 'severe' impairments found at step two, but whether the RFC accounts for the work-related limitations that flow from those impairments." *Cavalier v. Colvin*, 13-CV-651-FHM, 2014 WL 7408430, at *2 (N.D. Okla. Dec. 30, 2014). In assessing an individual's RFC, the ALJ must consider the limitations and restrictions imposed by a claimant's severe impairments and express any limitations in terms of specific, work-related activities he or she is able to perform. *See* SSR 96-8p, 1996 WL 374184, at *6-7 (July 2, 1996).

## B.    Degenerative Disc Disease

Plaintiff argues that her degenerative disc disease caused her chronic pain and difficulty sitting and standing "for any prolonged period of time." (ECF No. 15:7). According to Ms. Johnson "it does not support the light RFC and the ability to stand and walk most of the day" and "at a minimum, a sit-stand option should have been considered by the ALJ." (ECF No. 15:7).

Plaintiff's argument lacks merit because she has failed to meet her burden of proof that her degenerative disc disease would interfere with her ability to perform light work or that she would require a sit-stand option. "The burden to prove disability in a social security case is on the claimant, and to meet this burden, the claimant must furnish medical and other evidence of the existence of the disability." *Branum v. Barnhart*, 385 F.3d 1268, 1271 (10th Cir. 2004); *see* 20 C.F.R. § 404.1512(c) (explaining, in context of DIB, that claimant bears responsibility for identifying or submitting evidence that relates to finding of disability).

In support of her argument regarding her difficulty sitting and standing and the need for a "sit-stand" option, Plaintiff cites: (1) her own testimony and (2) a single medical record from Dr. Bruce Mackey. (ECF No. 15:7).

At the hearing, Ms. Johnson stated that her chronic pain was aggravated by sitting or standing "for any prolonged period of time." (TR. 37). The ALJ considered the testimony and then discounted it, stating "[Ms. Johnson's] . . . chronic pain and back impairments, while painful, [were] not as functionally limiting as alleged." (TR. 22). In

reaching this conclusion, the ALJ cited "little evidence of chronic debilitating pain, such as repeated episodes of muscle atrophy, spasms, or reduced range of motion." (TR. 22).

Ms. Johnson also cites a medical record from Dr. Mackey, wherein the physician diagnosed "chronic pain syndrome with intervertebral disc disorder with myelopathy, lumbar region." But "[t]he mere diagnosis of a condition does not establish its severity or any resulting work limitations." *Paulsen v. Colvin*, 665 F. App'x 660, 668 (10th Cir. 2016).

Ms. Johnson does not specifically challenge the ALJ's treatment of her testimony, but only argues that she could not perform light work and the RFC should have included a sit-stand option. (ECF No. 15:7). But Plaintiff's testimony, which the ALJ had discounted, and a diagnosis, without more, are insufficient bases on which to disturb the RFC determination. *See McNally v. Astrue*, 241 F. App'x. 515, 518 (10th Cir. 2007) ("with regard to [her severe impairments], the claimant has shown no error by the ALJ because she does not . . . discuss any evidence that would support the inclusion of any limitations.") (citation omitted). Accordingly, the Court rejects Plaintiff's argument that the RFC should have included additional limitations related to her degenerative disc disease.

### C.    Narcolepsy, Status Post Thyroidectomy, and Vitamin D Deficiency

Plaintiff states that her narcolepsy causes her to "fall asleep" and she suffers fatigue owing to her narcolepsy, her thyroidectomy, and a Vitamin D deficiency. (ECF No. 15:7-10, 14-16). As a result, Plaintiff alleges error through the ALJ's failure to account for

these conditions in the RFC or explain the lack of related limitations. (ECF No. 15:7-10, 14-16).

In support of her argument that "sleep limitations" ought to have been included in the RFC, Plaintiff cites: (1) her own testimony, (2) a Google search, and (3) a scholarly article. (ECF No. 15:7-10, 11-12).

At the hearing, Ms. Johnson stated:

- she had "severe fatigue,"

- she could "fall asleep even sitting there driving,"

- her thyroid condition and medication made her "extremely tired,"

- her sleeping patterns were reversed, causing her to sleep all day and be alert at night, and

- she believed the "falling asleep" would get her fired.

(TR. 37, 39-41, 49-50).

The ALJ considered the testimony and discounted it, stating:

[Plaintiff] had intermittently complained of ongoing fatigue associated with her resultant hypothyroidism, but the record indicates that these symptoms have been at least partially alleviated with medication. . . . Likewise, the claimant's narcolepsy has been helped "significantly" with Adderall and melatonin has dramatically improved her sleep quality.

(TR. 23-24). Ms. Johnson acknowledges that the ALJ cited Plaintiff's use of medication to alleviate some of her sleep-related issues. (ECF No. 15:8, 15). Even so, Plaintiff states: "'[h]elped' and cured are two different things; [Ms. Johnson] still has 'narcolepsy + cataplexy' symptoms." (ECF No. 15:8). But the ALJ considered Plaintiff's testimony, and

explained why, in light of other evidence, he did not believe that the RFC required limitations related to sleepiness or fatigue. Plaintiff does not specifically challenge the ALJ's treatment of her testimony and the Court finds the ALJ's explanation sufficient. *See Wall v. Astrue*, 561 F.3d 1048, 1068 (10th Cir. 2009) ("The ALJ properly discounted Claimant's testimony regarding her fatigue based on the substantial evidence in the record—which the ALJ thoroughly discussed in his decision[.]").

Plaintiff also relies on a Google search and a scholarly article in support of her allegations of fatigue, but the arguments are not persuasive. (ECF No. 15:9-10). First, Plaintiff states "a quick GOOGLE search of fatigue and thyroid cancer (TC) returns numerous results reflecting what a widespread problem fatigue is for TC survivors[.]" (ECF No. 15:9). But the Court is not concerned with the widespread phenomenon involving fatigue in general for thyroid cancer survivors, only with how fatigue affected Ms. Johnson.

Second, Ms. Johnson references a single medical record documenting her low Vitamin D, and then cites an article which links low levels of Vitamin D to fatigue. (ECF No. 15:10). But again, the generalization is of no concern to the Court, especially in light of the fact that the physician who diagnosed Ms. Johnson's low Vitamin D did not link it to fatigue or otherwise opine that the condition would somehow impact Plaintiff's ability to work. *See* TR. 1059. Accordingly, the Court rejects Plaintiff's challenge to the RFC for failing to include certain limitations relating to her narcolepsy, thyroidectomy, or low Vitamin D.

**D.     Seizures**

At the hearing, Plaintiff testified that she suffered from seizures which occurred weekly and left her fatigued. (TR. 37). Plaintiff's mother, who had witnessed the seizures, testified that after a seizure, it took her daughter "approximately a day" to recover. (TR. 47). The ALJ acknowledged the testimony from Plaintiff and her mother, and stated:

> [T]here is little if any objective evidence of ongoing seizure activity. The claimant alleges that her seizures are ongoing, but there is no mention of continuing seizure activity in her 2015 treatment notes, and her 2016 treatment notes reflect a diagnosis of narcolepsy with cataplexy, rather than a seizure disorder. In addition, the claimant's husband, Jason Bell, stated in January 2015 that the claimant had not had any seizures since starting Keppra in late 2014. Given the degree of control evidenced by the medical record, the undersigned . . . finds that the claimant's seizure disorder is adequately accounted for with the [RFC].

(TR. 23-24). Ms. Johnson alleges: (1) she is still having seizures and the RFC should have included related limitations and (2) the ALJ should have recontacted one of Plaintiff's physicians regarding her seizures. Neither argument has merit.

First, the ALJ has no duty to include limitations in the RFC which are not supported by the record. *See Kirkpatrick v. Colvin*, 663 F. App'x. 646, 650 (10th Cir. 2016) ("Clearly, an ALJ doesn't commit error by omitting limitations not supported by the record"); *Arles v. Astrue*, 438 F. App'x 735, 740 (10th Cir. 2011) (rejecting plaintiff's claim a limitation should have been included in his RFC because "such a limitation has no support in the record"). Here, the ALJ explained why he believed the record did not support the inclusion of any limitations related to Plaintiff's seizures. (TR. 23-24). Thus, the Court finds no error in the ALJ's failure to incorporate any seizure-related limitations in the RFC.

Second, Plaintiff argues that records from her treating neurologist, Amer Nouh: (1) contradict the ALJ's rationale for discounting Plaintiff's testimony and (2) are largely unreadable, triggering a duty in the ALJ to recontact the physician for clarification. (ECF No. 15:10-11). The Court disagrees. First, Ms. Johnson identifies a record from Dr. Nouh dated November 6, 2014 and argues: "[the ALJ's] subjective assertion that there were no records is patently false." (ECF No. 15:11). But the ALJ's assertion regarding the absence of evidence documenting continuing seizure activity concerned treatment notes in 2015, not 2014—the year of the record cited by Plaintiff. Second, Ms. Johnson argues that the bulk of Dr. Nouh's records are illegible and the ALJ should have recontacted the physician for clarification of his opinion. (ECF No. 15:10-11). Plaintiff is wrong.

In *White v. Barnhart,* 287 F.3d 903, 907–08 (10th Cir. 2001), the court held that the ALJ has a duty to "recontact a treating physician when the information the doctor provides is inadequate to . . . . determine whether you [the claimant] are disabled." (alteration in original) (internal citation omitted). In *White*, the plaintiff argued that the ALJ had a duty to recontact a physician for clarification of an opinion that the ALJ had rejected. *Id.* at 908. The Court disagreed, noting "it is not the rejection of the treating physician's opinion that triggers the duty to recontact the physician; rather it is the inadequacy of the "evidence" the ALJ "receive[s] from [the claimant's] treating physician" that triggers the duty. *See id.* The ALJ in *White* believed the information he received from the treating physician was "adequate" for consideration; that is, it was not so incomplete that it could not be considered. *See id.* However, the ALJ also believed that the conclusion

the physician had reached was insufficiently supported by the record as a whole. *Id. White* is controlling.

Here, the ALJ did not reject Dr. Nouh's records because he deemed them inadequate, but instead, due to the lack of records documenting seizures in 2015 and 2016 and evidence that the seizures had been effectively treated through medication. *See supra*. These reasons are valid bases for the ALJ to discount Plaintiff's testimony. *See Luna v. Bowen*, 834 F.2d 161, 165 (10th Cir. 1987) (noting that in evaluating a plaintiff's subjective symptoms, an ALJ must consider various factors, including: (1) levels of medication and their effectiveness, (2) the frequency of medical contacts, and (3) the consistency or compatibility of nonmedical testimony with objective medical evidence).

Based on the forgoing, the Court rejects Plaintiff's allegations regarding the inclusion of limitations into the RFC related to seizures and a duty to recontact Dr. Nouh.

### E.    Status Post Hip Disorder

Plaintiff argues that "[w]alking or sitting 6 hours a day is just going to exacerbate her hip . . . condition"[1] and that the RFC "is simply wrong and against common sense." (ECF No. 15:14). In support, Plaintiff cites: (1) a single record from Dr. Mackey and (2) her hearing testimony. (ECF No. 15:13-14). Plaintiff's arguments are not persuasive.

First, the only notation on the record from Dr. Mackey concerning Plaintiff's hip is a diagnosis of: "Enthesopathy of Hip Region." (TR. 680). Dorland's Medical Dictionary

---

[1]  Plaintiff actually states that her hip and back condition would be exacerbated by performing light work. *See* ECF No. 15:14. But the Court has already addressed Plaintiff's degenerative disc disease. *See supra*.

defines "enthesopathy" as a *"disorder of the muscular or tendinous attachment to bone."* *See* Dorland's Medical Dictionary. At step two, the ALJ acknowledged that Plaintiff had a "severe" hip disorder, which correlates with the diagnosis from Dr. Mackey. But as noted, a diagnosis, alone, does not require a finding of resulting limitations in the RFC. *See supra, Paulsen.*

But Plaintiff does not cite any medical evidence, either in this particular record from Dr. Mackey, or otherwise, that her hip disorder had caused any specific limitations in walking. Thus, her reliance on Dr. Mackey's record is insufficient. *See McNally, supra.*

Next, Plaintiff relies on her testimony at the hearing, where she had stated:

- one leg was shorter than the other, which caused to her walk with an abnormal gait,

- she was born without a hip socket which affected her ability to walk, and

- her surgeon had recommended a revision surgery on her right hip.

(TR. 40-41). The ALJ considered Plaintiff's testimony, but ultimately found that it did not require limitations beyond those found in the RFC, citing:

- evidence documenting Plaintiff's ability to move "with ease,"

- treatment notes indicating "no significant limitation in gait or posture,"

- evidence documenting Plaintiff's "normal gait," and

- a notation from Plaintiff's treating physician stating that although Plaintiff walked with a "slight antalgic gait," she did not require an assistive device.

(TR. 22-23). Plaintiff does not acknowledge the ALJ's findings, but instead only argues that the RFC did not properly account for her hip disorder. But without supporting

evidence, the Court cannot reach the same conclusion. *See Kirkpatrick*, at 648–49 (affirming the RFC because the plaintiff had failed to show that his alleged impairments had limited his functioning beyond that which was set forth in the RFC). Plaintiff presented no evidence in support of her allegations, and the ALJ properly discounted Ms. Johnson's testimony. Thus, the Court rejects Plaintiff's challenge to the RFC involving limitations related to her hip disorder.

### F.    Chronic Pain Syndrome

Plaintiff references her chronic pain syndrome and need for hip surgery and then argues that the ALJ performed an "understated" pain analysis. (ECF No. 15:16). When evaluating Plaintiff's chronic pain, the ALJ stated that the impairment "while painful, [was] not as functionally limiting as [Plaintiff] alleged." (TR. 22). In support, the ALJ relied on: (1) the absence of evidence of chronic debilitating pain, including "repeated evidence of muscle atrophy, spasms, or reduced range of motion" and (2) "inconsistent treatment notes" concerning her ability to walk. (TR. 22). Ms. Johnson challenges both rationales, but neither argument has merit.

First, regarding the ALJ's statement that the Plaintiff's chronic pain was "not as functionally limiting as [Plaintiff] alleged,"[2] Ms. Johnson states:

> Where is the ALJ getting that information? There is nothing in the file that supports that ridiculous pain analysis. It is as if pulled from whole cloth, because she needs a back fusion and hip surgery and would have had it if she had not lost her insurance. She is in chronic pain management for

---

[2]  (TR. 22).

heaven's sake, and has been since 2011. She has been on numerous pain
drugs that failed or that she was allergic to the[m].

(ECF No. 15:16). In answer to Plaintiff's question, the ALJ answered the same by providing evidentiary support for his conclusions. *See supra*. And regarding Ms. Johnson's alleged need for hip surgery, this fact does not necessarily translate to a finding that Plaintiff required more restrictive walking limitations than were outlined in the RFC. Finally, the ALJ acknowledged the fact that Plaintiff had received pain management from two physicians. (TR. 17). But that fact alone, does not render the ALJ's pain analysis deficient.

Second, the ALJ had relied on "inconsistent treatment notes" concerning Plaintiff's ability to walk. (TR. 22). In challenging this rationale, Ms. Johnson states: "The ALJ also mentions in this paragraph that [Plaintiff] was on a walker, then not on a walker, and that makes her treatment notes 'inconsistent.'" (ECF No. 15:16). But Plaintiff has misread the ALJ's analysis, as the "inconsistency" he noted concerned the fact that treatment records from January through July 2013 indicated both that Plaintiff needed a walker to ambulate, and that she also had no significant limitations in gait or posture. (TR. 22). Plaintiff does not specifically challenge this rationale or attempt to disprove it, but only states "there is no substantial evidence supporting the ALJ's statement." (ECF No. 15:17). But Ms. Johnson fails to elaborate on her cursory statement, or otherwise explain why the ALJ's statement lacked substantial evidence. This the Court will not do for her. *See Kirkpatrick* at 649 (noting that "it isn't [the Court's] obligation to search the record and

construct a party's arguments."). Based on the forgoing, the Court rejects Plaintiff's challenge to the ALJ's analysis of her chronic pain.

### G. Mental Impairments

At step two, the ALJ opined that Plaintiff suffered from "severe" impairments involving: major depressive disorder; PTSD; and anxiety disorder. (TR. 17). In the RFC, the ALJ accounted for the mental impairments by limiting Ms. Johnson to work which involved only the ability to understand and remember simple instructions and perform work related to simple, routine, and repetitive tasks. (TR. 21).

According to Ms. Johnson, the ALJ erred in: (1) failing to consider the combination of her mental and physical impairments, (2) his consideration of Plaintiff's mental impairments, and (3) failing to incorporate specific limitations into the RFC to reflect the mental impairments. (ECF No. 15:17-20). The Court disagrees.

First, in the opinion, the ALJ specifically stated that in assessing the RFC, he had considered all of claimant's medically determinable impairments, both physical and mental, and both severe and non-severe. (TR. 19). Thus, the Court rejects Plaintiff's first argument. *See Wall v. Astrue*, 561 F.3d 1048, 1070 (10th Cir. 2009) ("Where, as here, the ALJ indicates he has considered all the evidence our practice is to take the ALJ at [his] word.") (alteration in original).

Second, Ms. Johnson acknowledges that the ALJ had discounted Plaintiff's mental impairments, citing only minimal support in the records, but Plaintiff argues that the ALJ provided only "vague references" in support and "there is ample MER and testimony to

consider and analyze Ms. Johnson's mental impairments and the related functionally distinct limitations therefrom." (ECF No. 15:18). Two problems exist with Plaintiff's arguments. First, the ALJ did more than provide "vague references" in evaluating Plaintiff's mental impairments. Instead, the ALJ cited records from 2013-2015 which noted:

- "increased anxiety" owing to incorrect medication dosing,

- Normal mood, affect, concentration, and attention span,

- Appropriate mood and affect with intact memory, attention span, and concentration, and

- that Plaintiff's mental condition did not cause more than "minimal limitation."

(TR. 24). Second, although Plaintiff references "ample" medical evidence of record and her "several efforts" to receive mental health treatment, Ms. Johnson does not identify the medical evidence, nor explain her efforts in seeking treatment. (ECF No. 15:18). As noted, the burden is on Ms. Johnson "to furnish medical and other evidence of the existence of the disability." *See supra*, *Branum.* But Plaintiff has failed in this regard and the Court will not do this job for her. *See supra, Kirkpatrick*.

Finally, Ms. Johnson argues that the ALJ erred in failing to incorporate specific limitations into the RFC to reflect the mental impairments. But the ALJ explained why he believed the RFC did not warrant the inclusion of such limitations, and that is all he was required to do. *See Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007) (remand required for ALJ to explain the evidentiary support for his RFC determination). Thus, the

Court rejects Plaintiff's argument regarding the inclusion of additional limitations in the RFC related to Plaintiff's mental impairments. *See Arles*, at 740 (rejecting plaintiff's claim a limitation should have been included in his RFC because "such a limitation has no support in the record").

### H.     Non-Severe Impairments

Ms. Johnson alleges that the RFC "does not include consideration of the alleged non-severe impairments" including constipation and migraine headaches. (ECF No. 15:20-24).[3] The Court disagrees.

At the hearing, Plaintiff testified:

- she would sometimes go days without a bowel movement and her constipation required her to "dig out" her stools which caused bleeding and pain, and

- she had suffered migraine headaches for approximately one year which lasted for 2-3 days and caused vomiting.

(TR. 44, 50-51). In evaluating the impact of these impairments, the ALJ noted that Plaintiff had reported using medication, as needed, to help with her constipation and that medical records documenting Plaintiff's denial of migraines conflicted with her report of the same. *See* TR. 18-19. Ms. Johnson challenges both rationales, arguing that the evidence the ALJ had relied on was insufficient. *See* ECF No. 15:23 (arguing that the ALJ's reliance on a "stale" report about Plaintiff's constipation "could not constitute substantial

---

[3] The Court has already addressed the non-severe impairment involving Plaintiff's alleged Vitamin D deficiency. *See supra*.

evidence on which the ALJ could rely in formulating his RFC."); ECF No. 15:24 (arguing that the ALJ's reliance on evidence documenting the lack of migraine headaches "flies in the face of the record as a whole and significant evidence otherwise.").

But the problem with Ms. Johnson's argument is that she has once again failed to satisfy her burden of proof. In her argument, Plaintiff refers to "significant evidence" in the record which she believes contradicts the ALJ's findings, but Plaintiff does not identify the evidence or any limitations she believed the ALJ should have included in the RFC owing to either condition. As noted, the mere diagnosis of a condition—either constipation or migraine headaches—is insufficient—the focus is on whether the impairment caused any work-related limitations. *See supra*.

If Plaintiff believed that the ALJ's treatment of the conditions was insufficient or that he failed to account for limitations related to either condition, she needed to have explained why and/or identified what evidence would support a different conclusion or what limitations she believed flowed from the impairments. As noted, the Court will not construct Plaintiff's arguments for her, and once again, Plaintiff's failure to meet her burden of proof is fatal to her claims. Thus, the Court concludes that the ALJ adequately considered and evaluated Ms. Johnson's constipation and migraine headaches and rejects Plaintiff's contrary argument.

## VI.   NO ERROR IN THE CONSIDERATION OF A CONSULTATIVE EXAMINER'S OPINION

On June 25, 2015, consultative psychologist Dr. Stephanie Crall examined Plaintiff

and made two pertinent findings:

1. Plaintiff's ability to engage in work-related mental activities such as sustaining attention, understanding, and remembering and to persist at such activities was likely adequate for simple and complex tasks and

2. The presence of Plaintiff's various mental and physical impairments would "likely interfere with her ability to adapt to a competitive workplace."

(TR. 908).

In evaluating Dr. Crall's opinion, the ALJ stated:

Having reviewed the claimant's records, including Dr. Crall's report, the State agency consultative physicians opined that the claimant could perform simple and complex tasks commensurate with her training and intellectual abilities, could relate to others on a superficial work basis, and could adapt to work situations. In weighing the forgoing, the undersigned has considered that Dr. Crall had the opportunity to examine the claimant while the State agency consultative physicians did not. However, the consultative physicians also had the opportunity to review the claimant's remaining records. Those records, to the extent that they contain relatively benign mental examination findings, support the consultative examiners' conclusions regarding the claimant's ability to adapt to the work environment. Moreover, the claimant's own descriptions of her limitations—that she can shop in stores and go to church—indicate that her abilities are not as limited as implied by Dr. Crall, as such, Dr. Crall's opinions are given only partial weight, while the consultative physician's opinions are given some weight.

(TR. 25). Ms. Johnson argues: (1) the ALJ improperly relied on Plaintiff's daily activities

as a basis for discounting Dr. Crall's opinion, (2) improperly accorded more weight to the

State Agency physicians' opinions and (3) the ALJ's treatment of Dr. Crall's opinion was "vague and conclusory." (ECF No. 15:27-29). The Court disagrees.

First, although sole reliance on daily activities might have been improper, *see Thompson v. Sullivan*, 987 F.2d 1482, 1491 (10th Cir. 1993), here, the ALJ did not rely only on Ms. Johnson's daily activities in evaluating Dr. Crall's opinion. *See* TR. 25. Indeed, it appears that the ALJ's primary reason for discounting the consultative examiner's opinion was reliance on the State Agency physicians' opinions, which was valid. *See Chapo v. Astrue*, 682 F.3d 1285, 1291 (10th Cir. 2012) (in evaluating a consultative examiner's opinion, the ALJ may rely on consistency between the opinion and the record as a whole).

Next, Plaintiff contends that the ALJ improperly relied on the State Agency opinions, arguing essentially, that in the hierarchy of medical opinions, State Agency opinions are to be given the least amount of weight. (ECF No. 15:29). As a general rule, "[t]he opinion of an examining physician is generally entitled to less weight than that of a treating physician, and the opinion of an agency physician who has never seen the claimant is entitled to the least weight of all. *Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004). However, the Social Security Administration has stated:

> In appropriate circumstances, opinions from State agency medical and psychological consultants and other program physicians and psychologists may be entitled to greater weight than the opinions of treating or examining sources. For example, the opinion of a State agency medical or psychological consultant or other program physician or psychologist may be entitled to greater weight than a treating source's medical opinion if the State agency medical or psychological consultant's opinion is based on a

review of a complete case record that includes a medical report from a specialist in the individual's particular impairment which provides more detailed and comprehensive information than what was available to the individual's treating source.

SSR 96-6P, 1996 WL 374180, at *3 (July 2, 1996). Here, the State Agency physicians specifically stated that they had considered Dr. Crall's opinion in formulating their opinions. (TR. 59, 75). Thus, in this case, the Court deems appropriate the exception to the general rule as set forth in SSR 96-6p and rejects Plaintiff's challenge to the ALJ's reliance on the State Agency opinions in favor of that offered by Dr. Crall.

Finally, citing *Ringgold v. Colvin*, 644 F. App'x 841 (10th Cir. 2016), Plaintiff argues that "this particular 'case' issue has already been decided." (ECF No. 15:28). In *Ringgold*, the Court had concluded that the ALJ had provided "vague and conclusory" reasoning in discounting an opinion from Dr. Crall when the ALJ had discounted the physician's opinion by relying on "medical evidence of record and the claimant's reported activities of daily living." *Ringgold*, at 845. Plaintiff cites that portion of the opinion and then states: "This ALJ decision compares the claimant's daily activities to Dr. Crall's opinion and the determination of the amount of weight it should receive, and Judge West says that is vague and conclusory reasoning." (ECF No. 15:29). This is the extent of Plaintiff's argument and the Court finds it lacking for two reasons.

First, Plaintiff has not explained how, exactly, *Ringgold* is relevant to the instant case beyond the fact that both ALJs had discounted Dr. Crall's opinion by relying, in part, on the claimant's daily activities. But as discussed, this reliance was not improper. *See*

*supra*. Second, to the extent Plaintiff is attempting to argue that the ALJ had given "vague and conclusory" reasoning to discount Dr. Crall's opinions, the Court disagrees. The ALJ explained that the rejection was based on: (1) contrary opinions from State Agency physicians (who had reviewed Dr. Crall's opinion in reaching their conclusions) and (2) specific evidence of daily activities. (TR. 25). Neither of these rationales were "vague and conclusory" and the Court rejects Plaintiff's reliance on *Ringgold*.

## VII. NO ERROR IN THE EVALUATION OF PLAINTIFF'S SUBJECTIVE ALLEGATIONS

During the pendency of Plaintiff's appeal, the Social Security Administration issued SSR 16-3p: Evaluations of Symptoms in Disability Claims, 2016 WL 1119029 (Mar. 16, 2016). SSR 16-3p superseded SSR 96-7p: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements, 1996 WL 374186 (July 2, 1996). *See* SSR 16-3p. Ms. Johnson alleges that the ALJ erred in evaluating her subjective allegations, because "[t]here is no mention of the new policy [16-3p] being followed in this decision. And in fact it was not followed." (ECF No. 15:30). The Court disagrees.

"Generally, if an agency makes a policy change during the pendency of a claimant's appeal, the reviewing court should remand for the agency to determine whether the new policy affects its prior decision." *Frantz v. Astrue*, 509 F.3d 1299, 1302 (10th Cir. 2007) (internal quotation marks omitted). Here, although the ALJ did not expressly cite either SSR 96-7p or 16-3p, the Court finds no "meaningful distinction between the two rulings[.]" *Wagner v. Berryhill*, No. CIV-16-154-CG, 2017 WL 3981147, at *8 (W.D. Okla.

Sept. 11, 2017).[4] Thus, the only issue is whether the ALJ followed the proper analysis, despite the lack of citation to either ruling. The Court answers this question affirmatively. *Compare* SSR 96-7p & 16-3p *with* TR. 21-24. "Because the Court's determination would be the same under either standard, remand is not required for the sole purpose of evaluation under SSR 16-3p." Wagner, at *8; *see Lee v. Berryhill*, CIV-16-483-R, 2017 WL 2892338, at *4 n.10 (W.D. Okla. June 15, 2017) (R & R), *adopted*, 2017 WL 2880862 (W.D. Okla. July 6, 2017) (Order).

Ms. Johnson argues that the new policy "was not followed," but she fails to explain how or why. Instead, Ms. Johnson seems to go off-task and argue that ALJs in general tend to credit subjective allegations at step two, but then later discredit the same statements at step four when evaluating the RFC. (ECF No. 15:30). Plaintiff states that "ALJs have been doing this for years" and then makes a conclusory statement that "[a]t the very least, the ALJ should have explained why some of Ms. Johnson's statements were true while others were not." (ECF No. 15:30). But Ms. Johnson has failed to develop this argument, and the Court has no idea which statements Plaintiff believes the ALJ had improperly discredited. As discussed, this deficiency is fatal to any further consideration of Plaintiff's argument. *See supra*.

---

[4]  The purpose of the new ruling is to remove the term "credibility" in order to remain consistent with the regulations which do not use the term and to clarify that an evaluation of symptoms is not a character evaluation. *See* SSR 16-3p, at *1.

**ORDER**

The Court has reviewed the medical evidence of record, the transcript of the administrative hearing, the decision of the ALJ, and the pleadings and briefs of the parties. Based on the forgoing analysis, the Court **AFFIRMS** the Commissioner's decision.

ENTERED on May 24, 2018.

SHON T. ERWIN
UNITED STATES MAGISTRATE JUDGE